IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JONATHAN P.,[1]

      Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

      Defendant.

Case No. 3:22-cv-01971-JR

OPINION AND ORDER

RUSSO, Magistrate Judge:

      Plaintiff Jonathan P. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his applications for Title II Disability Insurance Benefits and Title XVI Social Security Income under the Social Security Act. All parties have consented to allow a Magistrate Judge enter final orders and judgement in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is affirmed.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

## PROCEDURAL HISTORY

Born in 1985, plaintiff alleges disability beginning January 1, 2006, due to anxiety, panic attacks, depression, low IQ, and IEPs. Tr. 52-53. His applications were denied initially and upon reconsideration. Tr. 52-62, 63-73, 76-87, 88-99. On June 22, 2017, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 36-51. On July 21, 2017, the ALJ issued a decision finding plaintiff not disabled. Tr. 15-32. After the Appeals Council denied a request for review, plaintiff filed a complaint in this Court. Tr. 1-6. Upon decision by this Court, plaintiff's case was remanded for further proceedings. Tr. 680-91.

Plaintiff subsequently filed new applications on November 6, 2018, which were also denied. Tr. 644-61, 662-76. On order of the Appeals Council, plaintiff's applications were consolidated, and new proceedings took place. Tr. 692-96. Following plaintiff's second hearing on July 2, 2020, wherein plaintiff was represented by counsel and testified, along with a VE, the ALJ issued an unfavorable decision on July 31, 2020. Tr. 568-86, 595-612. After the Appeals Council denied a request for review, plaintiff filed a complaint in this Court. Tr. 549-55.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found that plaintiff met the insured status requirements through March 31, 2017, and had not engaged in substantial gainful activity since December 1, 2013, the amended alleged onset date. Tr. 571. At step two, the ALJ determined the following impairments were medically determinable and severe: "instability of right knee, borderline intellectual functioning, alcohol use disorder, histrionic and dependent personality traits, and other anxiety disorder." Tr. 571. At step three, the ALJ found

plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 571.

Because plaintiff failed to establish a presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that plaintiff has the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c) except:

> "[He can] lift 50 pounds occasionally and 24 pounds frequently; carry 50 pounds occasionally and 25 pounds frequently; stand and walk 6 hours total of 8, and sit up to 6 hours of 8; push and pull as much as able to lift and carry; can perform simple, routine, repetitive tasks; limited to simple work-related decisions; limited to occasional co-worker contact, but no work as part of a team; and only incidental public contact (e.g., passing in the hallway)."

Tr. 573.

At step four, the ALJ determined plaintiff is unable to perform any past relevant work. Tr. 584. At step five, the ALJ concluded, based on the VE's testimony, there existed a significant number of jobs in the national economy plaintiff could perform despite his impairments, such as machine packager, hand packager, and electrical accessories assembler. Tr. 585.

## DISCUSSION

Plaintiff argues the ALJ erred by rejecting the medical opinions of Kim Webster, M.D., and Scott Alvord, Psy.D. Pl.'s Opening Br. 4, ECF 8.

**Medical Opinion Evidence**

Plaintiff asserts the ALJ improperly discredited the opinions of Kim Webster, M.D., and Scott Alvord, Psy.D.

Where, as here, the plaintiff's application is filed before March 27, 2017, the old rules apply. At the time of plaintiff's application, there were three types of acceptable medical opinions

in Social Security cases: those from treating, examining, and non-examining doctors. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). In general, the opinions of treating doctors are accorded greater weight than those of examining doctors, and the opinions of examining doctors are entitled to greater weight than those of a non-examining doctors. *Id.* To reject the uncontroverted opinion of a treating or examining doctor, the ALJ must present clear and convincing reasons supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons supported by substantial evidence. *Id.*

"An ALJ can satisfy the 'substantial evidence' requirements by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison v. Colvin*, 759 F.3d 995, 1012 ((9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). Merely stating conclusions is insufficient: "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*. "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantiative basis for his conclusions." *Id*. at 1012-13 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1646 (9th Cir. 1996)).

Dr. Webster conducted a comprehensive musculoskeletal exam on August 8, 2019. Tr. 914. She noted that plaintiff has had neither treatment nor evaluation for his knee pain, has no problem sitting, standing, walking, or lifting, and that he moves around easily. Tr. 915-16. She also noted that plaintiff can stand independently on his right leg, has some trouble with his left leg, has some difficulty walking heel to toe, and that his Romberg and straight leg tests were negative. Tr. 917.

While plaintiff displayed some lateral medial instability in his right knee, there was no pain to palpation, no swelling, normal bulk, and tone with 5/5 strength in upper and lower extremities, and all reflexes were normal and intact throughout. Tr. 917-18. As a result of testing, Dr. Webster assessed that plaintiff could stand and walk for two hours, lift, and carry 20 pounds occasionally and 10 pounds frequently, and should have environmental limitations due to coarse respiratory sounds during the exam. Tr. 918. Dr. Webster also recommended limiting bending, stooping, crouching, kneeling, crawling, and climbing, but did not provide further information. Tr. 918. The ALJ granted Dr. Webster's opinion partial weight because the exam revealed some minor abnormalities with mostly normal results, plaintiff's imaging results were unremarkable, he retained the ability to walk at least a mile at a time despite knee pain, and the treatment records provided no support for Dr. Webster's findings. Tr. 578-79.

Plaintiff argues the ALJ failed to provide specific and legitimate reasons supported by substantial evidence in the record because the ALJ offered only a "vague reference" to the evidence, and by failing to lay out a "detailed and thorough summary of the facts or identify any conflicting clinical evidence to support his finding." Pl.'s Opening Br. 6, ECF 6 (citing Tr. 578-79; *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)). Plaintiff's argument is unavailing.

The ALJ provided a detailed and thorough summary of the facts and conflicting clinical evidence, charting plaintiff's medical records from 2014 to 2020, noting that while plaintiff alleges an onset date of December 2013, records prior to 2015 are scarce. *See* Tr. 574-79. The ALJ noted that, according to plaintiff, his knee pain began in 2011. Tr. 950. The ALJ also noted that plaintiff was walking a mile or two every day as of January 2020 when he sought treatment for right foot pain but not knee pain; plaintiff did not seek treatment for, nor complain of, knee pain until February 2020. Tr. 946, 951. Imaging results of plaintiff's knee were also unremarkable, and while

his knee was tender to palpation, musculoskeletal examinations revealed grossly normal findings. Tr. 915-18, 951, 956, 988. Furthermore, plaintiff provided no evidence that was overlooked, that the ALJ failed to consider, or that would provide support for his assertions. Finally, plaintiff cites three cases supporting his assertion that "laxity of the knee with otherwise normal exam results is consistent with a light RFC." Pl.'s Reply Br. 2, ECF 15 (citing *Ryan Allen C. v. Kijakazi*, 2021 WL 5139476; *Francine F. v. Kijakazi*, 2021 WL 8442062; *Gaston v. Astrue*, 2021 WL 3264547). However, in each case relied upon by plaintiff, laxity of the knee alone was not enough. In *Ryan Allen C.*, plaintiff had a host of problems, including laxity in all joints, chronic knee, hip, and shin pain, lower and upper back pain, disc space narrowing in the thoracic spine, bilateral knee strain, abnormal range of motion in both knees, and right ankle abnormality. 2021 WL 5139476 at *9. In *Francine F.*, the plaintiff had mild degenerative joint disease, evidence of swelling, and decreased range of motion. 2021 WL 8442062 at *5-6. In *Gaston,* the only case from this district, the plaintiff had multiple surgeries, tri-compartmental degenerative joint disease, and a history of injury and instability in both knees. 2021 WL 3264547 at *2. None of plaintiff's cases provide any support for their assertions. "Looking to *all* the pages of the ALJ's decision," the ALJ did not err in rejecting the sit/stand and lifting limitations assessed by Dr. Webster. *Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022) (emphasis in original).

      Dr. Alvord conducted a psychological evaluation of plaintiff on June 7, 2020. Tr. 993. During examination, Dr. Alvord noted that plaintiff was pleasant, gave excellent effort, his thought processes were intact, his long-and-short-term memory were adequate, he had some difficulty with his attention and concentration regarding his ability to perform math and spelling, had difficulty with abstract thinking when presented with proverbs, possessed adequate insight and judgment, and had an adequate fund of general knowledge. Tr. 995-96. Following the exam, plaintiff was

diagnosed with a mild intellectual disability, panic disorder with agoraphobia, and a depressive disorder. Tr. 996. As a result of the examination, Dr. Alvord assed plaintiff's limitations as follows: plaintiff would not have difficulty performing simple and repetitive tasks but would have severe difficulty performing detailed and complex tasks; plaintiff would have mild to moderate difficulty accepting instructions from supervisors; moderate to severe difficulty interacting with co-workers and the public; mild to moderate difficulty performing work activities on a consistent basis without special or additional instructions/accommodations; moderate to severe difficulty maintaining regular attendance in the workplace (assuming he was required to leave his residence); moderate difficulty completing a normal workday/workweek without interruptions from a psychiatric condition; and moderate difficulty dealing with usual stress encountered in the workplace. Tr. 996. Notably, Dr. Alvord also stated that because the evaluation was done via telemedicine, his results were "minimal, provisional, and would need follow up testing." He also stated that he was unable to make a definitive statement regarding plaintiff's intellectual functioning, and that he had not reviewed any of plaintiff's medical history. Tr. 993, 996. The ALJ granted Dr. Alvord's opinion little weight because it conflicted with Dr. Johnston's evaluations which showed greater levels of functioning and plaintiff's statements and activities contradicted Dr. Alvord's assessments. Tr. 579-80.

Plaintiff argues that Dr. Alvord's opinion should have been given more weight because the ALJ failed to provide specific and legitimate reasons supported by substantial evidence to reject any portion of that opinion. Specifically, plaintiff argues that his activities, such as reading, playing video games, and the piano, do not contradict Dr. Alvord's opinion. He also notes that his wife does the shopping, he needs someone to accompany him shopping, his social activities consist of speaking on the phone, his cooking involves preparing eggs and sandwiches and sometimes meals,

none of which demonstrate his ability to perform detailed and complex tasks. Plaintiff's argument, however, is inconsequential. Dr. Alvord limited plaintiff to simple, repetitive tasks, as did the ALJ. Tr. 577, 996.

Plaintiff next argues that his ability to go on walks, go shopping with accompaniment, and visit a friend in person do not undermine Dr. Alvord's opinion that plaintiff has moderate to severe difficulty interacting with co-workers and the public. Plaintiff argues he rarely leaves his home, he does not walk "very long" distances, and states he speaks with friends on the phone rather than visiting them in person. Pl.'s Opening Br. 9-10, ECF 11. Plaintiff's argument is unavailing. First, Dr. Alvord provided no functional limitation as to the amount of contact plaintiff could have. Tr. 996. Second, plaintiff's, and wife's, statements about his ability to get along with others, get along with authority figures, go out in public, socialize in small groups, go shopping alone, and gather with friends contradict Dr. Alvord's assessment. *See* Tr. 249-51, 820, 822, 842, 844, 911. As a result, the ALJ did not err in limiting plaintiff to occasional contact with co-workers, no teamwork, and only incidental contact with the public. Tr. 573.

Next, plaintiff argues the ALJ improperly rejected Dr. Alvord's moderate to severe limitations regarding attendance in the workplace, noting the ALJ did so based on his activities such as walking, getting along with authorities, meeting with friends, and going shopping and on camping trips. Pl.'s Opening Br. 10, ECF 11. However, relying on the totality of the ALJ's decision, the ALJ did not err in rejecting this limitation. For example, Dr. Alvord wrote that this limitation was "assuming [plaintiff] was required to leave his residence." As noted above, plaintiff had little demonstrated difficulty leaving his home and, in fact, did so daily, for at least an hour at a time.

Finally, plaintiff argues the ALJ's rejection of Dr. Alvord's limitations regarding ability to deal with workplace stress and complete a normal workday/workweek was improper because his findings did not contradict Dr. Johnston's. Pl.'s Opening Br. 10, ECF 11. In fact, plaintiff argues that Dr. Johnston's two prior evaluations were inconsistent with each other. *Id*.

Dr. Johnston provided two psychodiagnostics assessments, one in 2015, and another in 2019. Tr. 342, 908. In 2015, Dr. Johnston noted plaintiff could understand and remember relatively simple, one-step instructions, and may have difficulty with more complex or multi-step instructions, that his ability to attend, concentrate, and persist may be mildly impaired, that he can engage in appropriate social interactions, that he would be able to work a normal workday/workweek, and that with treatment his adaptive skills would probably be enhanced. Tr. 346. In 2019, Dr. Johnston noted plaintiff's presentation and history were not consistent with a diagnosable anxiety, depression, or panic disorder, that his self-reported symptoms were a way to garner sympathy and avoid responsibility, and that testing revealed he could complete a workday/workweek, understand, and remember instructions, and attend, concentrate and persist. Tr. 911-12. Generally speaking, the first and second evaluation were similar, with Dr. Johnston noting in the first evaluation that plaintiff "may" have difficulties with more complex tasks and instructions, and that his ability to attend, concentrate, and persist "may" be mildly impaired. Tr. 346. The second evaluation was made with the benefit of plaintiff's treatment records in the years between the first and second evaluation and did not use equivocal language to describe plaintiff's limitations. Tr. 911-12. It is not clear these two opinions were inconsistent with each other. Furthermore, it is the ALJ's duty to resolve conflicts in the medical opinions, and plaintiff has failed to establish that the ALJ improperly relied on Dr. Johnston's opinions. *See Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020).

Page | 9 – OPINION AND ORDER

Plaintiff also argues that Dr. Johnston's second evaluation did not account for clinical findings, ignoring that clinical observations are also considered clinical findings, and not explaining what clinical findings were ignored. Plaintiff then points out that Dr. Alvord explained that plaintiff has a panic disorder with agoraphobia based on a 22 score in the BECK Depression Inventory, directly contradicting Dr. Johnston's findings from 2019 that plaintiff has no diagnosable disorder while also arguing that Dr. Johnston did not have such testing results. This line of reasoning, however, asks this Court to reweigh the evidence, an activity in which we will not engage. *See Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

In sum, the ALJ did not err in evaluating the medical opinions provided by Drs. Webster and Alvord.

## CONCLUSION

For the reasons stated above, the Commissioner's decision is AFFIRMED, and this case is DISMISSED.

IT IS SO ORDERED.

DATED this 11th day of September, 2024.

/s/ Jolie A. Russo<br>Jolie A. Russo<br>United States Magistrate Judge